[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 04-14382

———————————

D. C. Docket No. 03-00229-CV-MCR-MD

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2005
THOMAS K. KAHN
CLERK

CHARLES COFFMAN,

Plaintiff-Appellant,

versus

CHUGACH SUPPORT SERVICES, INC.,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Florida

———————————————

(June 8, 2005)

Before DUBINA, PRYOR and RONEY, Circuit Judges.

DUBINA, Circuit Judge:

Plaintiff/appellant Charles Coffman appeals the district court's order granting summary judgment to defendant/appellee Chugach Support Services, Inc. ("Chugach") on Coffman's claims of employment discrimination due to his active military status, in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301, *et seq.* For the reasons that follow, we affirm.

## I. BACKGROUND

### A. *Facts*

In October 1997, the United States Air Force awarded Del-Jen, Inc. ("Del-Jen") a contract to provide base support services at Tyndall Air Force Base in Panama City, Florida. In the same month, Del-Jen hired Coffman as a Hazardous Materials Specialist to work at Tyndall. From that time through November 2001, Coffman worked for Del-Jen and served as a Non-Commissioned Officer in the Air Force Reserve. In July 2001, Alex Gunn, Del-Jen's project manager, promoted Coffman to the position of Hazardous Materials Program Manager. That promotion included a pay raise for Coffman.

There is some confusion over whether Coffman's position as manager was exempt from Del-Jen's collective bargaining agreement as a non-union position. One of Del-Jen's former officers, Steve Kukak, testified that Gunn did not have

the authority to make Coffman's position exempt from the collective bargaining agreement by adding duties and pay. Apparently, Del-Jen discovered the mistake over Coffman's promotion while Coffman was away on active duty. As the district court noted, however, this particular dispute over Coffman's position is ultimately immaterial. At the time he left, and at the time he returned from active duty, Coffman considered his position one of management.

In November 2001, the Air Force ordered Coffman to return to active military duty for one year. Coffman notified the proper authorities at Del-Jen about his return to active service. Consequently, Del-Jen hired Rhonda Cruz as a temporary replacement for Coffman during his absence.

On October 1, 2002, while Coffman was still away on active duty, the Air Force awarded the base support services contract at Tyndall to Chugach, replacing Del-Jen as the primary contractor. The services that Chugach provided at Tyndall were similar to those services Del-Jen had provided. Del-Jen then became a subcontractor with Chugach on the project at Tyndall. Both Chugach and Del-Jen maintained separate contracts with the Air Force. For the portion of the project that was not subcontracted out, Chugach sent in a transition team to interview about 100 Del-Jen employees for employment positions with Chugach.

Previously, in anticipation of Chugach taking over, Coffman had sent

3

Chugach his resume, service orders, and a letter explaining his interest in retaining, and returning to, his former position as a Hazardous Materials Specialist. As a result, Chugach interviewed Coffman in September 2002, but the interview was not for a specific position. Coffman testified that he thought this interview was merely a courtesy meeting. During the interview, Coffman mentioned that he held a managerial position prior to his reactivation. Coffman stated that the Chugach representatives seemed surprised and shocked to learn that he held a non-union position as a manager. Sometime during the interview, the parties discussed an available position that was similar to Coffman's previous position with Del-Jen, but different in that the Chugach position was a non-management union position. Coffman testified that he made it clear during the interview that he was willing to talk with Chugach and work something out regarding the discrepancies between the available position and his former position.

Adrian Darkow, the head of Chugach's start-up team, testified that he was involved in the interview with Coffman. He remembered discussing a management position and believed that Coffman was looking for a management position. According to Darkow, the discrepancies between the positions are why Chugach did not have a position for Coffman. Darkow also claimed that, at some point, he discussed Coffman's situation with Del-Jen representatives and left with

4

the understanding that Del-Jen would be rehiring Coffman. Additionally, Darkow asserted that Coffman's military status was not a factor in Chugach's decision not to hire him. Patrick McCredie, another one of the Chugach representatives who was also present at Coffman's interview, testified that he thought Coffman and the representatives were discussing a vehicle maintenance position. He recalled that Chugach did not have a vehicle management position available for Coffman. He also stated that Coffman's military status had nothing to do with Chugach's decision not to hire him.

Chugach then interviewed Cruz for Environmental Hazardous Materials Specialist, the Chugach position similar to Coffman's former position and, at the interview, offered her a permanent job, which she accepted. Originally, Chugach compensated Cruz at the same pay rate she had received in her prior employment with Del-Jen. Later, Chugach increased her compensation to the union pay rate, as Chugach agreed to abide by Del-Jen's collective bargaining agreement until it could negotiate its own agreement with the union. Cruz's duties at Chugach were similar to her duties at Del-Jen, except for some additional tasks, such as security.

Out of 100 former Del-Jen employees, Chugach hired 97. Coffman was one of the three Del-Jen employees not hired. Coffman was the only Del-Jen employee on military leave at the time of the transition from Del-Jen to Chugach.

On November 14, 2002, the Air Force gave Coffman an honorable discharge from active military service. In the same month, Coffman returned to Tyndall and began working for Del-Jen as a Vehicle Control Coordinator. Coffman did not wish to remain in this position, but wanted to return to his pre-activation position. Thus, in January of 2003, Coffman mailed a letter to Chugach's President, Robert Westermann, requesting to be reinstated to his pre-activation position. In the letter, Coffman specifically mentioned his reemployment rights under the USERRA. Chugach denied his request and asserted that Del-Jen's decision to bring him back to a position of comparable pay and status satisfied the requirements of the USERRA.

## B. *Procedural History*

In September 2003, Coffman filed a three-count complaint against Chugach and Del-Jen seeking damages, attorney's fees, and reinstatement to his former position under the USERRA. Counts I and III alleged that Chugach violated the USERRA's anti-discrimination and reemployment provisions respectively. Count II alleged that Del-Jen violated the USERRA's anti-discrimination provision. Coffman and Del-Jen eventually settled their dispute.

Both Chugach and Coffman filed motions for summary judgment. Chugach filed a motion on Counts I and III. Coffman filed a motion for partial summary

judgment only as to Count III, asking for reinstatement to his position. The district court granted Chugach's motion and entered final judgment in favor of Chugach. Coffman then timely appealed the district court's order.

## II. ISSUES

1. Whether the district court properly determined that Chugach was not liable to Coffman as a "successor in interest" or "successor employer" and, therefore, owed no duty to reemploy Coffman under 38 U.S.C. § 4312 and 38 U.S.C. § 4313.

2. Whether the district court properly determined that Coffman could not establish a prima facie case of discrimination on the basis of his active military service under 38 U.S.C. § 4311 in regard to Chugach's decision not to hire him.

## III. STANDARD OF REVIEW

This court reviews *de novo* the district court's order granting summary judgment. *Chappell v. Chao*, 388 F.3d 1373, 1376 (11th Cir. 2004).

## IV. DISCUSSION

### A. *Statutory provisions*

Congress enacted USERRA to prohibit employment discrimination on the basis of military service as well as to provide prompt reemployment to those individuals who engage in non-career service in the military. *See* 38 U.S.C. §

7

4301 (2002). Sections 4311 and 4312 of the USERRA provide separate and distinct statutory protections for service members. *See Wrigglesworth v. Brumbaugh*, 121 F. Supp. 2d 1126, 1134 (W.D. Mich. 2000). Section 4311 prohibits employers from discriminating against employees on the basis of military service and retaliating against individuals, whether service members or not, who testify or give statements on behalf of a USERRA claimant. Section 4311 provides, in pertinent part, that:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

> (b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

> (c) An employer shall be considered to have engaged in actions prohibited –

> (1) under subsection (a), if the person's membership,

8

application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or

(2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

38 U.S.C. § 4311 (2002).

Section 4312 addresses the right of reemployment for persons who serve in the military. Veteran reemployment statutes "date from the nation's first peacetime draft law, enacted in 1940." *Leib v. Georgia-Pacific Corp.*, 925 F.2d 240, 242 (8th Cir. 1991). Congress intended for "[t]he statutory right to reinstatement . . . to bolster the morale of those serving their country and to facilitate their reentry into the highly competitive world of job finding without the handicap of a long absence from work." *Id.* (quotation and citation omitted). Unlike section 4311, this provision does not require an employee to show any

9

discriminatory animus.  *See Wrigglesworth*, 121 F. Supp. 2d at 1134-35.  Section

4312 provides, in pertinent part, that:

> (a) Subject to subsections (b), (c), and (d) and to
> section 4304, any person whose absence from a
> position of employment is necessitated by reason
> of service in the uniformed services shall be
> entitled to the reemployment rights and benefits
> and other employment benefits of this chapter if –
>
> (1) the person (or an appropriate officer of
> the uniformed service in which such service
> is performed) has given advance written or
> verbal notice of such service to such
> person's employer;
>
> (2) the cumulative length of the absence and
> of all previous absences from a position of
> employment with that employer by reason
> of service in the uniformed services does
> not exceed five years; and
>
> (3) except as provided in subsection (f), the
> person reports to, or submits an application
> for reemployment to, such employer in
> accordance with the provisions of
> subsection (e).
>
> . . .
>
> (d)(1) An employer is not required to reemploy a
> person under this chapter if –
>
> (A) the employer's circumstances have so
> changed as to make such reemployment

10

impossible or unreasonable;

(B) . . . such employment would impose an undue hardship on the employer;

. . . .

(2) In any proceeding involving an issue of whether –

(A) any reemployment referred to in paragraph (1) is impossible or unreasonable because of a change in an employer's circumstances,

(B) any accommodation, training, or effort referred to in subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313 would impose an undue hardship on the employer, or

(C) the employment referred to in paragraph (1)(C) is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period,

the employer shall have the burden of proving the impossibility or unreasonableness, undue hardship, or the brief or nonrecurrent nature of the employment without a reasonable expectation of continuing indefinitely or for a significant period.

38 U.S.C. § 4312 (2002). Section 4312 also imposes upon the employee a requirement to timely notify the employer of his intention to return to work. 38 U.S.C. § 4312(e)(1). Pertinent to the present case, an employee whose active

11

military duty lasted more than 180 days must submit an application for reemployment with his employer no later than 90 days after his completion of active duty. 38 U.S.C. § 4312(e) (1)(D).

### B. *Successor in interest*

The question of successor in interest or successor employer under USERRA is one of first impression for this circuit. Under USERRA, "employer" is defined to include a "successor in interest" to a plaintiff's previous employer. 38 U.S.C. § 4303(4)(A)(iv) (2002). USERRA does not, however, define "successor in interest." The legislative history of USERRA states that "[t]he Committee intends that the multi-factor analysis utilized by the court in *Leib v. Georgia-Pacific Corp.*, 925 F.2d 240 (8th Cir. 1991), is to be the model for successor in interest issues, except that the successor's notice or awareness of a reemployment rights claim at the time of merger or acquisition should not be a factor in this analysis." H.R. Rep. No. 103-65, reprinted in 1994 U.S.C.C.A.N. 2449 at 2454.

In *Leib*, the plaintiff had worked for a company named St. Regis and left his employment to serve in the Air Force. 925 F.2d at 241. After receiving an honorable discharge, he sought reemployment with Georgia-Pacific since it had purchased St. Regis's assets while he was away on active duty. *Id.* Georgia-Pacific refused to recognize the plaintiff's reemployment rights, claiming that it

12

had only purchased St. Regis's assets and, as such, was not obligated as a successor in interest to St. Regis for purposes of the veteran's rights statute. *Id.* The government filed suit on behalf of the plaintiff. *Id.* at 242. The district court decided in favor of Georgia-Pacific, and, on appeal, the Eighth Circuit reversed the district court's judgment. *Id.* at 241.

In so doing, the court examined two distinct prior interpretations of the successor in interest language in veteran's reemployment statutes. *Id.* at 244. First, the court examined the "ownership and control" test. *Id.* at 243-44. This test looks for common ownership and control between the successor employer and the veteran's previous employer. *See id.* at 244. Second, the court examined the "business continuity" test suggested by the government. *Id.* at 245-47. This test looks at the actual business activities being conducted before and after the change in employers so that a "simple paper transaction" would not rob a veteran of his reemployment rights. *See id*. at 245. After considering both tests, the court concluded that "a multi-factor, business continuity approach [was] the most consistent with Congress'[s] intent." *Id.* This test includes an examination of "whether there is (1) substantial continuity of the same business operations, (2) use of the same plant, (3) continuity of work force, (4) similarity of jobs and working conditions, (5) similarity of supervisory personnel, (6) similarity in

machinery, equipment, and production methods, and (7) similarity of products or services." *Id.* at 247.

Coffman contends that Chugach was a successor in interest to Del-Jen and, thus, was required to reemploy him under sections 4312 and 4313. Coffman argues that the district court did not utilize the *Leib* approach, but instead, focused only on the ownership and control test to conclude that Chugach was not a successor in interest to Del-Jen. Although the district court mentioned the multi-factor test, Coffman asserts that its decision relied on the fact that there was no continuity of ownership or control when Chugach became the primary contractor. Coffman contends that this was error because a review of the multi-factor test demonstrates that Chugach is a successor in interest to Del-Jen.

In response, Chugach claims that it is not the successor in interest or successor employer to Del-Jen; therefore, it is not liable to reemploy Coffman. Specifically, Chugach claims that the district court properly determined that Chugach was not Del-Jen's successor in interest because there was no predecessor-successor relationship between Chugach and Del-Jen in the form of a merger or transfer of assets. We conclude that the district court and Chugach are correct.

While we agree with Coffman that a determination of successor liability

under USERRA requires an analysis under the *Leib* factors as stated by Congress, such an analysis is unnecessary and improper when no merger or transfer of assets even transpired between the two subject companies. Generally, one of the fundamental requirements for consideration of the imposition of successor liability is a merger or transfer of assets between the predecessor and successor companies. *See Kicinski v. Constable Hook Shipyard*, 168 F.2d 404, 408-09 (3d Cir. 1948) (holding that because there was no predecessor-successor relationship, defendant corporation was under no duty to reemploy nurse returning from military service who had worked for alleged predecessor company). In the present case, indisputably, there was no merger or transfer of assets between Del-Jen and Chugach.

Coffman urges this court to ignore the holding in *Kicinski* because the reemployment statute there did not contain any successor in interest language. This argument is without merit. Plainly, Congress's addition of the successor in interest language did not alter the requirement for a merger or transfer of assets between the predecessor and successor companies for consideration of successor liability. Moreover, Coffman cannot cite any case, legislative history, or authority indicating otherwise.

Coffman also implies that the equitable principles underlying USERRA and

the successor in interest doctrine allow this court to overlook the lack of a predecessor-successor relationship as described above. In this regard, citing *Preyer v. Gulf Tank & Fabricating Co.*, 826 F. Supp. 1389 (N.D. Fla. 1993), a civil rights case, and *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396 (3d Cir. 1999), an employment discrimination case, Coffman contends we should be mindful that successor liability is derived from equitable principles, and fairness is the prime consideration in its application. Thus, Coffman urges this court to use its equitable powers to fulfill USERRA's remedial purpose by reinstating Coffman to his pre-activation position. *See* 38 U.S.C. § 4323(e) ("The court may use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter.").

Coffman's argument is unpersuasive. Although USERRA "is to be liberally construed for the benefit of those who left private life to serve their country," *Leib* 925 F.2d at 245 (quotation and citation omitted), and undoubtedly equitable principles underlie the doctrine of successor liability, *see United States v. Davis*, 261 F.3d 1, 53 (1st Cir. 2001), these factors are not without their limits. Further, *Rego* and *Preyer*, the very cases Coffman cites for the proposition that equitable principles underlie the imposition of successor liability, involved asset

16

acquisitions or transfers between the subject predecessor and successor companies, *Rego*,181 F.3d at 399, *Preyer*, 826 F.Supp. at 1391-93, as did *Leib*. 925 F.2d at 241. Not surprisingly, Coffman fails to cite one case in which a court imposed successor liability when no predecessor-successor relationship existed.

Because there is no predecessor-successor relationship between Del-Jen and Chugach, Chugach is not the successor in interest or successor employer to Del-Jen and, as such, owed no duty under sections 4312 and 4313 of USERRA to reemploy Coffman. Accordingly, we conclude that the district court properly granted summary judgment in favor of Chugach as to Coffman's reemployment claim.

### C. *Prima facie case under Section 4311*

Section 4311 clearly mandates proof of discriminatory motive. *See Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *Brandsasse v. City of Suffolk, Va.*, 72 F. Supp. 2d 608, 616-17 (E.D. Va. 1999). The standard of proof is the so-called "but for" test. *Sheehan*, 240 F.3d at 1013.

In order to establish his prima facie case, Coffman must show by a preponderance of the evidence that his protected status was a motivating factor in Chugach's decision not to hire him. *Brandsasse*, 72 F. Supp. 2d at 617. A motivating factor does not mean that it had to be the sole cause of the employment

17

action. Instead, "it is one of the factors that 'a truthful employer would list if asked for the reasons for its decision.'" *Id.* (citation omitted); *see also Smith v. School Bd. of Polk County, Fla.*, 205 F. Supp. 2d 1308, 1314 (M.D. Fla. 2002). "Indeed, [m]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Brandsasse*, 72 F. Supp. 2d at 617 (citation omitted); *see also Smith*, 205 F. Supp. 2d at 1314-15. Circumstantial evidence plays a critical part in these cases, "for discrimination is seldom open or notorious." *Sheehan*, 240 F.3d at 1014. The court can infer discriminatory motivation under the USERRA from a variety of considerations, such as:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.* "When the employee has met this burden, the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id.* This burden-shifting framework "applies to both so-called 'dual motive' cases and so-called 'pretext'

18

cases. " *Id.* "Thus in USERRA actions there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the agency action, upon which the agency must prove, by a preponderance of evidence, that the action would have been taken despite the protected status." *Id.*

The district court correctly found that Coffman failed to present either direct or circumstantial evidence to demonstrate that Chugach "relied on, took into account, considered, or conditioned its decision" not to hire Coffman on the basis of his active military service. *See Brandasse*, 72 F. Supp. 2d at 617. Contrary to Coffman's contention, the district court utilized the proper analysis in making its determination. The court considered the factors enunciated in *Sheehan* and concluded that, although there was a close proximity in time between Coffman's military service and Chugach's decision not to hire him, Chugach had not expressed hostility towards service members. In fact, as the district court noted, Chugach hired both military and non-military personnel. Also, both Darkow and McCredie testified that Chugach did not consider Coffman's military status in its decision not to hire Coffman. Furthermore, the district court found that Coffman failed to demonstrate any disparate treatment of active military employees compared to other employees with similar work records.

In addition, there is no inconsistency between Chugach's proffered reason

for not hiring Darkow and other actions taken by Chugach. Darkow testified that at the time of the interview with Coffman, Darkow was under the impression that Coffman held a managerial position with Del-Jen and was seeking similar employment with Chugach. As explained earlier, although Chugach had a similar position as the one Coffman had with Del-Jen, it was not a management position.

Darkow also testified that he was under the impression that Del-Jen was going to rehire Coffman and that he had spoken with Del-Jen officials about that. Although Coffman rightly contends that Kukak's testimony contradicts Darkow's claims about speaking with Del-Jen's officials on Coffman's pending status, this does not create a genuine issue of material fact as to Coffman's section 4311 claim of discrimination. As Chugach has sufficiently demonstrated, it would not have hired Coffman because he sought a management position that Chugach simply did not offer. In sum, based on the record evidence, and following the standard enunciated in *Sheehan*, we conclude that no reasonable jury could find that Coffman's military status was a motiving factor in Chugach's decision not to hire him. Even if Chugach had conditioned its decision in part on Coffman's military status, summary judgment was still proper because, as noted above, Chugach has shown it would have made the same decision absent Coffman's military status. Accordingly, we conclude that the district court properly granted summary

20

judgment in favor of Chugach on Coffman's discrimination claim brought pursuant to section 4311 of USERRA.

## V.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Chugach.

**AFFIRMED.**