[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10170
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-01749-VEH

JAMES L. WARD,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICE,
RON HEADLEY,
RUSSELL HAMRAC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 11, 2014)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

James L. Ward, a veteran of the U.S. Army Reserves, appeals from the grant

of summary judgment in favor of his civilian employer, United Parcel Service

(UPS), on his discrimination and retaliation claims brought under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), as well as his discrimination claim brought under the Americans with Disabilities Act of 1990 (ADA), as amended by the ADA Amendments Act of 2008 (ADAAA).[1] After review of the parties' arguments and the record, we affirm.

## I.

In 2003 Ward left his job at UPS after being called to active-duty military service. While stationed in Iraq, he suffered a combat injury to his left knee. As a result, when Ward returned from Iraq, UPS denied his July 2005 request to return to work because his service-related injury prevented him from performing any full-time union job at the Anniston Center where he had worked. Ward then filed a complaint with the U.S. Department of Labor (DOL) in the fall of 2005, asking that UPS reinstate him to full-time employment. Ward and UPS settled this complaint.

In 2006 UPS placed Ward in an operations-clerk position, but he was removed from that job in October 2009 when its former occupant, who had seniority, returned from her own tour of military duty. Ward then remained out of work until early 2011, when he returned to work at UPS after accepting two part-

---

[1] Ward's suit also raised USERRA claims against UPS officials Russell Hamrac and Ron Headley, as well as several state-law tort claims. Ward does not challenge the disposition of these claims on appeal.

time positions that involved scanning and loading packages. Ward's USERRA discrimination and retaliation claims challenge UPS's actions that kept Ward out of work during this 14-month period.

In March 2011, Ward's UPS supervisor learned that Ward was going to see his private physician because he was experiencing pain in his leg. Ward's supervisor later instructed Ward to see a company physician before he could return to work. The company doctor cleared Ward to return to work. Ward also provided UPS with a note from his private doctor.

Then in May 2011, UPS officials met with Ward and accused him of submitting a falsified doctor's note from his private doctor during the March 2011 events just described. Ward alleged that he was terminated at this meeting, although UPS disputes that fact. Regardless, apparently after investigating who prepared the disputed doctor's note, UPS told Ward to return to work. UPS also paid Ward for two days of missed work between the date of the meeting and when Ward returned to work. At some later date, Ward again changed to the operations-clerk position and he was still employed in that job with UPS as of May 2014.

In May 2012, Ward filed suit against UPS and two of his supervisors alleging discrimination and retaliation under the USERRA, discrimination and retaliation under the ADA, and various state law tort claims. After discovery, UPS filed a motion for summary judgment on all of Ward's claims, which the district

court granted.  Ward now appeals the granting of summary judgment on three

claims:  (1) the USERRA discrimination claim, based on UPS's failure to employ

Ward between October 2009 and January 2011; (2) the USERRA retaliation claim,

based on UPS's failure to employ him during the same time period; and (3) the

ADA discrimination claim with regard to UPS's conduct in March and May 2011.

## II.

We review a district court's grant of summary judgment de novo, viewing

the evidence in the light most favorable to the non-moving party.  Brooks v. Cnty.

Comm'n of Jefferson Cnty., 446 F.3d 1160, 1161–62 (11th Cir. 2006).  Summary

judgment is appropriate if the movant shows that no genuine issue of material fact

exists, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating that no genuine issue of

material fact exists.  Brooks, 446 F.3d at 1162.  If the moving party meets its initial

burden, the non-movant then bears the responsibility to demonstrate the existence

of a genuine issue of material fact.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112,

1116 (11th Cir. 1993).

## A.  USERRA Discrimination Claim

Ward first argues that the district court erred in granting summary judgment

on his USERRA discrimination claim.  Ward claims that UPS did not allow him to

combine an open part-time scanning position with another part-time clerk position

occupied by an employee who had less seniority.  Ward also claims that UPS made it onerous for him to return to work by requiring him to submit to numerous, unwarranted medical evaluations.

Under the USERRA, a person who is a member of or who has performed in a uniformed service shall not be denied "initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership" or performance of service.  38 U.S.C. § 4311(a). An employer, therefore, violates the USERRA where the employee's membership or service in the uniformed services is a "motivating factor" in the employer's failure to reemploy the individual.  See id. § 4311(c)(1).

To establish a prima facie case of discrimination under the USERRA, the plaintiff must demonstrate by a preponderance of the evidence that his military membership or service was a motivating factor in the employer's decision.  See Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1238 (11th Cir. 2005). A motivating factor does not necessarily have to be the sole cause for the employer's decision, but is defined as one of the factors that a truthful employer would list as its reasons for its decision.  Id.  A court can infer a discriminatory motivation from a variety of considerations, such as:  (1) the temporal proximity between the plaintiff's military activity and the adverse employment action; (2) inconsistencies between the proffered reason for the employer's decision and

other actions of the employer; (3) an employer's expressed hostility toward members of the protected class combined with its knowledge of the plaintiff's military activity; and (4) disparate treatment of similarly situated employees.  Id.

Here, Ward did not present sufficient evidence that would allow a reasonable jury to find that his military service was a motivating factor in UPS's failure to employ him between October 2009 and January 2011.  Notably, he failed to offer evidence of express hostility towards members of the military or disparate treatment of similarly situated employees.  See id.  At best, Ward attempted to show inconsistencies in UPS's proffered reasons for its actions.  But the evidence Ward offered did not show a material dispute of fact.

First, Ward failed to offer concrete evidence—beyond his own deposition testimony claiming he believed another qualifying position existed—to dispute UPS's decision not to combine two part-time positions.  Ward's failure is particularly significant given UPS's Business Manager Russell Hamrac's testimony that the second position Ward pointed to (1) did not meet Ward's medical restrictions and (2) necessarily had to be performed at the same time as the other available part-time position.  Second, Ward did not offer sufficient evidence to dispute UPS's contention that its requests for additional medical evaluations were good faith efforts to get updated information on Ward's physical restrictions.

6

Nor has Ward offered evidence that these requests prevented him from returning to work during the disputed period.

Because Ward has not shown a material dispute of fact as to whether his military service was a motivating factor in UPS's failure to employ him between October 2009 and January 2011, the district court did not err in granting summary judgment in favor of UPS on Ward's USERRA discrimination claim.

### B.  USERRA Retaliation Claim

Ward next argues that the district court wrongly concluded that he had failed to show evidence of retaliation under the USERRA.  See 38 U.S.C. § 4311(b).  He contends that UPS retaliated against him for filing his 2005 DOL complaint by holding him out of work for 14 months after he was removed from the operations-clerk position in 2009.  Ward argues that a jury could find causation despite the lack of temporal proximity, because UPS retaliated against him when the "first opportunity" presented itself.

The USERRA prohibits an employer from taking an adverse employment action against employees who seek to enforce the Act's protections.  38 U.S.C. § 4311(b).  An employer engages in prohibited retaliatory conduct where it takes an adverse action against an employee motivated by that employee's efforts to enforce the USERRA, unless the employer can prove that the action would have been taken in the absence of the employee's protected activity.  Id. § 4311(c)(2);

7

see also Sheehan v. Dep't of the Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (stating that the USERRA's enactment confirmed "that the standard of proof in a discrimination or retaliation case is the so-called 'but-for' test" (quotation marks omitted)).

In the context of employment retaliation cases, a plaintiff's burden to prove causation can be met by showing a close temporal proximity between the statutorily protected activity and adverse-employment action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam). Where there was a significant time gap between the protected activity and the adverse action, the plaintiff must offer additional evidence to demonstrate a causal connection, such as a pattern of antagonism or that the adverse action was the first opportunity for the employer to retaliate. See, e.g., Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (evidence of a "pattern of antagonism" following the protected activity may give rise to the inference of causation); Dale v. Wynne, 497 F. Supp. 2d 1337, 1346 (M.D. Ala. 2007) ("In this instance, a six-week gap is enough to show temporal proximity, particularly because Dale's return to work was the first opportunity Wilson had to retaliate against her.").

Here, the district court did not err in concluding that Ward failed to point to evidence supporting his claim that his 2005 DOL complaint was the motivating factor behind UPS's allegedly adverse actions in 2009. 38 U.S.C. § 4311(b),

(c)(2). The temporal gap between the two events was too long to demonstrate causation without additional evidence. See Thomas, 506 F.3d at 1364 ("[M]ere temporal proximity, without more, must be 'very close.'"). Although Ward claimed UPS's employment decision in 2009 was its "first opportunity" to retaliate, the record does not support this assertion given that UPS made at least two other intervening decisions to re-employ Ward. Because Ward has not offered evidence showing a causal connection between his 2005 DOL complaint and his period of unemployment between 2009 and 2011, the district court did not err in granting summary judgment for UPS on Ward's USERRA retaliation claim.

### III.  ADA Discrimination Claim

Lastly, Ward argues that the district court erred when it granted summary judgment on his ADA discrimination claim with regard to the events occurring in March and May 2011. He argues that the court wrongly concluded that his termination in May 2011 and his temporary loss of two and a half days' worth of pay did not qualify as adverse employment actions. Additionally, Ward argues that he presented sufficient evidence that he had been discriminated against on account of his disability, which was a limp.

The ADA holds that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). We analyze ADA discrimination claims under the McDonnell Douglas burden-shifting framework. See Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973)). To establish a prima facie case, a plaintiff may show that (1) he was disabled, (2) he was qualified to perform the job, and (3) he was subjected to an adverse employment action because of his disability. Cleveland, 369 F.3d at 1193. If the plaintiff meets his prima facie burden, and the defendant presents a legitimate, non-discriminatory reason for its actions, the plaintiff may then demonstrate that the reason given was a pretext for disability discrimination. Id.

We have also cautioned that "establishing the elements of the McDonnell Douglas framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion in an employment discrimination case." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff also may defeat a summary judgment motion by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Id. (quotation marks omitted).

Here, even assuming both that Ward's permanent limp qualified as a disability under the ADA and that he suffered an adverse employment action, the

district court correctly concluded that he failed to present sufficient evidence of a causal link between the adverse action and the disability.  The record does not support Ward's claim that he was singled out for the company-doctor examination based on his permanent limp.  To the contrary, Ward does not dispute that he was having leg pain and was going to see his personal doctor.  The record also shows that UPS had a policy of sending its workers to a company doctor when they complained of pain while on the job, which Ward does not dispute.  Neither does he demonstrate that UPS discriminatorily applied this policy or that he was treated differently than other employees in this regard.

Likewise, Ward failed to offer evidence that his alleged termination was related to his disability instead of UPS's concerns that he may have falsified a doctor's note.  As a result, Ward has not shown a material dispute of fact on his ADA discrimination claim.

## IV.

Because the district court did not err in granting summary judgment in favor of UPS on Ward's USERRA and ADA claims, we **AFFIRM.**