**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11946

_____

JEREMY SORENSON, et al.,
    an individual,

                                                                    *Plaintiffs,*

ADAM MCLEAN,
    an individual,
JAMES DOYLE,
    an individual, on behalf of themselves and all
    others similarly situated,

                                                        *Plaintiffs-Appellants,*

*versus*


DELTA AIR LINES, INC.,
    a Delaware Corporation,

                                                          *Defendant- Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-00541-ELR
_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and BRASHER, Circuit Judges.

LUCK, Circuit Judge:

This appeal involves a dispute between an airline and two of its former pilots. Adam McLean and James Doyle worked for Delta Air Lines for nearly a decade. At the same time, they also served in the United States Air Force Reserve. The former pilots sued Delta alleging that the airline pushed them out because of their military service obligations, in violation of the Uniformed Services Employment and Reemployment Rights Act. They also claimed that Delta's pension-contribution and vacation-time-accrual benefit programs violated the Act. The district court sided with Delta and granted summary judgment for the airline on all three claims. This is McLean's and Doyle's appeal. After careful review, and with the benefit of oral argument, we affirm.

## FACTUAL BACKGROUND

*Delta's Leave Benefits and Policies*

As part of their collective bargaining agreement, Delta's pilots receive a package of benefits. Four benefits in that package are relevant to this appeal.

First, Delta provides military leave to pilots who have military service obligations. When a pilot informs Delta that he has military duty, the company notes the military leave on the pilot's schedule and marks him as unavailable for work during the leave period. The "pilot performing military duty (on orders . . . or any other duty that is paid by the state or the U.S. government) is ineligible to perform Delta duties in any capacity (except while on military terminal leave)." The prohibition against working for Delta while on military orders is called the concurrent duty policy.

Second, Delta offers paid sick leave for pilots who are unable to fly for medical reasons. "Delta pilots are entitled to use sick leave only when a personal medical condition, physical or mental, disables the pilot from performing duties as a flight crewmember."

Third, Delta's compensation includes pension contributions for its pilots, even when they are on military leave. For pilots on military leave, Delta calculates the pension contribution using the "average line value," which projects the average number of hours that the pilot would work if he were not on leave and then multiplies that number by the pilot's hourly rate.

And fourth, Delta allows pilots on known leaves of absence to accrue vacation time. Delta offers this type of leave to pilots when it needs to reduce its labor costs. During a known leave of absence, a pilot remains "active" but does not fly any routes.

The plaintiffs, McLean and Doyle, worked as Delta pilots for nearly a decade. While flying for Delta, they also served as reservists in the United States Air Force.

*McLean*

In 2017, Delta investigated McLean for abusing his military-leave and sick-leave benefits. During its investigation, Delta learned that McLean had "routinely misused military leave and sick leave in multiple ways." Once, for example, McLean told Delta that he was too sick to fly, took paid sick leave, and then went on to fly jets for the military while on sick leave. McLean did so despite an express warning from his Delta supervisor that he could be fired if he did side work while on sick leave. Delta discovered at least ten other times when McLean took paid sick leave and then performed military duty on the same day.

The investigation also revealed that, twenty-five times, McLean falsely informed Delta that he had military duty. Because Delta cannot prevent its employees from fulfilling their military service obligations, McLean's false reports kept Delta from scheduling him for work on those days—despite the fact he was available. McLean further violated Delta's military leave policies by failing to inform the airline of his military orders on over one hundred days. At least twice, McLean flew military jets while he was being paid to be on standby for Delta, meaning that if the airline had needed him, he wouldn't have been able to fly. When asked about these incidents, McLean denied abusing his military leave, but acknowledged how Delta could have thought he was doing so. In total, Delta found that McLean received at least $53,628.70 in unearned pay and benefits due to his abuse of sick and military leave.

Based on the findings of the investigation, Delta notified McLean that it intended to terminate his employment. The notice listed two reasons for termination. First, it recounted McLean's extensive "misuse of military leave" as an "independent ground[] for termination." Second, it laid out McLean's sick leave violations and explained that his abuse of Delta's sick-leave benefits provided an "independent basis for [his] termination." McLean was entitled to contest his termination, but instead he chose to resign.

### Doyle

In 2015, Delta investigated Doyle for abusing his military- and sick-leave benefits. Delta became concerned about Doyle's use of sick leave when he told a supervisor that he had gone skiing over the New Year when he was supposed to be on sick leave with the flu. Another time, Doyle told Delta he could not fly because of a knee injury, but his military record showed that he flew test flights for the Air Force that same day. Delta also suspected that Doyle was abusing its leave policies by stringing together sick days with military leave and vacation days to extend his time off.

Based on his leave-request records, Doyle said he could understand why Delta would be concerned that he was abusing his sick-leave benefits, although he thought it was a misunderstanding. Before Delta finished investigating him, Doyle resigned.

### PROCEDURAL HISTORY

McLean and Doyle sued Delta for violating the Uniformed Services Employment and Reemployment Rights Act. They

brought three claims. First, they alleged that Delta discriminated against them by constructively terminating them because of their military service. Second, the pilots claimed that Delta contributed less to their pensions while they were on military leave than the Act required. And third, they alleged that Delta allowed pilots on comparable types of leave to accrue vacation time, but not pilots on long-term military leave.[1]

Delta moved for summary judgment on all three claims, which the district court granted. First, as to the constructive-termination claim, the district court explained that McLean and Doyle had shown a prima facie case that Delta pressured them to resign because of their military service. But, the district court wrote, Delta was entitled to summary judgment because the evidence was undisputed that the airline had legitimate, nondiscriminatory reasons for the forced resignations: McLean and Doyle were abusing their sick-leave benefits.

Second, as to their pension-contribution claim, the district court determined that the pilots' compensation was not reasonably certain and fluctuated month-to-month. Thus, for the periods McLean and Doyle were away on military leave, Delta was obligated to contribute to their pensions their average rate of compensation over the last twelve months. *See* 38 U.S.C. § 4318(b)(3)(B). Because the evidence showed that Delta contributed more to

---

[1] There were other plaintiffs and other claims in the district court, but they are not relevant to this appeal.

McLean's and Doyle's pensions than they were entitled to under the Act, the district court granted summary judgment to the airline.

And third, as to the vacation-time claim, the district court concluded that McLean and Doyle were not entitled to accrue vacation time during periods of long-term military leave under the Act because there was no evidence that Delta allowed pilots on a comparable type of leave to accrue vacation time.

McLean and Doyle appeal the summary judgment for Delta.

## STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the non-moving party. *Gogel v. Kia Motors Mfg. of Ga.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## DISCUSSION

We divide our discussion into three parts. First, we consider the summary judgment for Delta on McLean's and Doyle's constructive-termination claim. Then, we address the summary judgment on their pension-contribution claim. Finally, we review the summary judgment on their vacation-time claim.

*The Constructive-Termination Claim*

McLean and Doyle brought their constructive-termination claim under the general discrimination provision of the Act. That provision says a "member of . . . a uniformed service shall not be denied . . . any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). "An employer shall be considered to have engaged in actions prohibited . . . if the person's membership . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . ." *Id.* § 4311(c)(1).

In the summary-judgment context, we've explained that the general discrimination provision sets out a two-step burden-shifting framework. At the first step, the plaintiff may "establish his prima facie case" by showing a genuine dispute that his military status "was a motivating factor" in his termination (or any other denial of an employment benefit). *See Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005), *superseded by statute on other grounds*, Pub. L. No. 111-275 § 702, 124 Stat. 2864, 2887–88 (2010). "[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Id.* (citation modified).

If a plaintiff makes out a prima facie case, at the second step, "the burden shifts to the employer" to show undisputed evidence "that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id.* at 1238–39 (citation

modified); *see also Thomas v. Broward Cnty. Sheriff's Off.*, 71 F.4th 1305, 1312 (11th Cir. 2023).  Put together, in evaluating summary judgment under the Act's general discrimination provision, "there must be an initial showing by the employee that military status was at least a motivating . . . factor" in the adverse employment action, "upon which the [employer] must" show "that the action would have been taken despite the protected status." *Coffman*, 411 F.3d at 1239.

As to the first step, the district court concluded that McLean and Doyle established a prima facie case that their constructive termination was motivated, at least in part, by their military service.[2] And, at the second step, the district court ruled that Delta would have constructively terminated both pilots—irrespective of their military service—for the legitimate reason, standing alone, that they abused their sick-leave benefits.  The summary judgment evidence supports the district court's conclusion.

Starting with McLean, he admitted he used his sick-leave benefits to perform military duties.  McLean told Delta that he was too sick to fly, took paid sick leave, and then flew jets for the military while he was on leave.  He did so despite a warning from his supervisor that he could be fired if Delta learned he was flying while on sick leave.  Delta's investigation into McLean revealed ten other times when he took sick leave but then worked for the mili-

---

[2] We assume (without deciding) that McLean and Doyle were constructively terminated.

tary while on leave. Delta expressed an intent to fire McLean because he abused his sick-leave benefits. The airline's notice of intended termination included that his "misuse of Delta sick leave provide[d] an independent basis for [his] termination."

Doyle, too, abused his sick-leave benefits. Doyle told a supervisor that he went skiing over New Year's while on sick leave with the flu. As part of its investigation, Delta found another incident where Doyle called in sick with a knee injury but then flew jets for the military on the same day. Delta questioned Doyle about his "sudden increase in [sick leave] usage beginning in 2012 and use of [sick leave] in conjunction with" other types of leave "in what appeared to be an attempt to extend time off." Doyle later resigned.

Against this evidence, McLean and Doyle argue that Delta's independent, standalone reason for constructively terminating them was really that they violated its concurrent duty policy. Because the concurrent duty policy only applies to those in military service, the argument goes, a termination based on that policy is a termination because of their military service in violation of the Act's general discrimination provision. But the pilots confuse Delta's concurrent duty policy with its sick-leave benefits. The concurrent duty policy prohibits a pilot from performing military duty while also being paid by Delta. It has nothing to do with sick leave. The sick-leave benefits allow a pilot to take paid time off only if he is medically unable to perform his job.

McLean points to notes from a Delta meeting agenda which lists his name next to "preparing for termination" for "[military leave] abuse, manipulation, [and the] concurrent duty [policy]." But all these notes show is that McLean's concurrent duty violations were one of several reasons Delta had for firing him. Delta was also concerned about McLean's "manipulation," which is consistent with his abuse of sick leave. Indeed, McLean's notice of termination listed his abuse of military and sick leave as separate, "independent" grounds for his termination.

Similarly, Delta questioned Doyle because he told his supervisor that he abused his sick-leave benefits and appeared to be stringing together sick leave with other types of leave to extend his time off. The undisputed evidence supports Delta's standalone reason for constructively terminating McLean and Doyle: notwithstanding their military service, they abused their sick-leave benefits.

The pilots also argue that because they denied abusing their sick-leave benefits there was a factual dispute for trial. But the focus of the second step in the burden-shifting framework is on the employer's reason for terminating the employee, not the employee's conduct. The question is whether the employer would have taken the same action, for an independent, standalone reason, regardless of the employee's military status. "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Cf. Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d

1354, 1363 n.3 (11th Cir. 1999); *Flowers v. Troup Cnty. Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("[E]mployers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as [the] action is not for a discriminatory reason." (citation modified)).  Here, there's no dispute that Delta's independent, standalone reason for pushing out McLean and Doyle was that they abused their sick-leave benefits, even if that reason was mistaken.

### The Pension-Contribution Claim

The pilots' pension-contribution claim involved a different provision of the Act governing pension benefit plans.  Under that provision, where an employee's compensation includes pension benefits, while he's on military leave, he must "be treated as not having incurred a break in service."  38 U.S.C. § 4318(a)(2)(A).  In other words, while on military leave, the employee must receive the same pension benefits that he would have received had he been working instead of on military leave.

The Act requires the employer to "compute[]" the employee's compensation in one of two ways.  *Id.* § 4318(b)(3).  By default, the employer must compensate its employee on military leave using "the rate the employee would have received but for the period of [military] service."  *Id.* § 4318(b)(3)(A).  But there's a different rule when "the determination of such rate is not reasonably certain."  *Id.* § 4318(b)(3)(B).  In that case, the employer must com-

pensate the employee on military leave "on the basis of the employee's average rate of compensation during the [twelve]-month period immediately preceding" the period of military service. *Id.*

In reviewing the summary judgment evidence, the district court concluded that the pilots' compensation—including payments made for their pensions—did not violate the Act's pension-benefits provision because their compensation was not reasonably certain. It also found that Delta paid more than the pilots' average rate of compensation during the twelve-month period before their military leave. The pilots challenge the district court's first conclusion.

But the summary judgment evidence is undisputed that McLean's and Doyle's compensation was not reasonably certain. Delta's policies allowed pilots flexibility in fixing their schedules, and McLean's and Doyle's hours varied considerably. During months without leave, for example, McLean's hours ranged from seventy to ninety-nine, while Doyle's hours varied between seventy-two and 104. In January 2011, McLean worked seventy-one hours. In February, he worked ninety-five hours. And in March, he worked eighty hours. It was the same story for Doyle; his hours were also inconsistent. In February 2012, for instance, Doyle worked seventy-six hours. The next month he logged 104 hours.

To rebut this evidence, the pilots point to their expert's report, which they argue shows that the average rate of compensation for Delta's non-military pilots, as a group, was reasonably cer-

tain. But that testimony is immaterial under the Act's pension-benefits provision, which focuses on the reasonable certainty of "*the employee's* compensation," 38 U.S.C. § 4318(b)(3) (emphasis added), and not the group the employee is in. The Act's pension-benefits provision requires the employer to compensate the employee "at the rate *the employee* would have received but for the period of service," or, if the employee's rate of compensation "is not reasonably certain, on the basis of *the employee's* average rate of compensation" in the twelve months before the military leave. *Id*. § 4318(b)(3)(A)–(B) (emphasis added). The pilots' expert didn't do that. She did not calculate the rate of compensation for McLean and Doyle. While the average non-military pilot may have had a reasonably certain rate of compensation, we know from the record that McLean and Doyle did not.

So, under the Act's pension-benefits provision, Delta was allowed to compensate McLean and Doyle while they were on military leave "on the basis of [their] average rate of compensation during the [twelve]-month period immediately preceding" their military leave. *Id*. § 4318(b)(3)(B). It is undisputed that Delta did that and more. Delta's average-line-value formula, implemented "to benefit military reservists," resulted in greater pension contributions for McLean and Doyle than a normal twelve-month average would have. Delta was free to contribute more to McLean's and Doyle's pensions than the law required. *See* 20 C.F.R. § 1002.7(a) (explaining the Act "establishes a floor, not a ceiling, for the em-

24-11946              Opinion of the Court                    15

ployment and reemployment rights and benefits of those it pro-tects" and that "an employer may provide greater rights and bene-fits than [the Act] requires").

### The Vacation-Time Claim

McLean's and Doyle's final claim was that Delta did not al-low them to accrue vacation time while they were on long-term military leave but permitted pilots on other types of comparable leave to accrue vacation time while on leave. The different treat-ment for long-term military leave, they say, violated the Act's rights-and-benefits provision. Under that provision,

> a person who is absent from a position of employ-ment by reason of service in the uniformed services shall be—
>
> (A) deemed to be on furlough or leave of absence while performing such service; and
>
> (B) entitled to such other rights and benefits not de-termined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, prac-tice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1). The Act's regulations explain that "accrual of vacation leave . . . must be provided by an employer to an em-ployee on a military leave of absence only if the employer provides

that benefit to similarly situated employees on comparable leaves of absence." 20 C.F.R. § 1002.150(c).

"[T]o determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor to compare." *Id.* § 1002.150(b). But "other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave" are also relevant. *Id.* "It is up to the employee to demonstrate that any given stretch of military leave is comparable to a form of non[-]military leave that is accorded a benefit." *White v. United Airlines, Inc.*, 987 F.3d 616, 624 (7th Cir. 2021).

The district court granted summary judgment for Delta on the pilots' vacation-time claim because they did not demonstrate that their long-term military leave was comparable to a form of non-military leave that accrued vacation time. On appeal, McLean and Doyle argue that this was error. They point to known leaves of absence as a comparable form of non-military leave. Delta, they explain, violated the Act's rights-and-benefits provision because pilots on comparable known leaves of absence accrued vacation time while pilots on long-term military leave did not.

But the undisputed summary judgment evidence shows that the two kinds of leave were not comparable. First, as to duration, a known leave of absence is only offered one month at a time. In contrast, long-term military leave, as the name suggests, lasts a long time—even years. For example, the evidence shows that Doyle was on long-term military leave from February 2008 to November 2011—more than three years.

24-11946                 Opinion of the Court                 17

Second, as to purpose, Delta offers senior pilots a known leave of absence when the company is overstaffed and needs to furlough employees. Pilots are considered active while on a known leave of absence—and can be recalled—but do not fly any flights. Long-term military leave, on the other hand, allows a pilot to perform military service and Delta cannot call the pilot back to work.

And third, as to the ability to choose when to take leave, Delta pilots can decide for themselves if they want to take a known leave of absence when it is offered. Military pilots have no choice. They must take leave when they are ordered to report to military service.

In short, none of the factors show that known leaves of absence are comparable to long-term military leave. Because they are not comparable, Delta was entitled to summary judgment on the pilots' vacation-time claim.[3] *Cf. Clarkson v. Alaska Airlines, Inc.*,

---

[3] For the first time in their summary judgment response, the pilots added to their vacation-time claim that long-term military leave was comparable to special conflict military leave, a different type of military leave offered by Delta. The district court rejected this late amendment because a plaintiff "may not amend her complaint through argument in a brief opposing summary judgment." *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). We reject it for the same reason. The proper procedure for the pilots to assert a new "basis for entitlement" was to seek to amend their complaint." *See Hurlbert v. St. Mary's Health Care Sys., Inc.* 439 F.3d 1286, 1297 (11th Cir. 2006). Because they didn't, the vacation-time claim based on special conflict military leave was not properly before the district court and is not properly before us on appeal.

59 F.4th 424, 434 (9th Cir. 2023) (explaining that summary judgment is appropriate where "the facts of a case suggest that no reasonable jury could see enough commonality for a meaningful comparison" (citation modified)).

**AFFIRMED**.