**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

KELLY STEPHEN JENNINGS,
　　　　　Appellant,

　　　　v.

SOCIAL SECURITY
　　ADMINISTRATION,
　　　　　Agency.

DOCKET NUMBER
AT-4324-11-0442-B-1

DATE: April 10, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Matthew J. Dowd, Esquire, Washington, D.C., for the appellant.

Robert W. Hughes, Jr., Esquire, Duluth, Georgia, for the appellant.

John Benson, Boston, Massachusetts, for the agency.

Meeka S. Drayton, Esquire, Baltimore, Maryland, for the agency.

Owen Keegan, Esquire, Atlanta, Georgia, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**FINAL ORDER**

¶1      The appellant has filed a petition for review and the agency has filed a cross petition for review of the remand initial decision, which ordered corrective action in this appeal filed under the Uniformed Services Employment and Reemployment Rights Act of 1994 (codified as amended at 38 U.S.C. §§ 4301-4335) (USERRA).  Generally, we grant petitions such as these only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we DENY the appellant's petition for review, GRANT the agency's cross petition for review, and AFFIRM the remand initial decision AS MODIFIED.  Except as expressly MODIFIED by this Final Order to find that the appellant did not prove his USERRA claim as it relates to the denial of annual and sick leave, we AFFIRM the remand initial decision.

**BACKGROUND**

¶2      This case has a long procedural history that is set forth in detail in *Jennings v. Social Security Administration*, 123 M.S.P.R. 577, ¶¶ 2-13 (2016).  In essence, the agency filed a complaint in 2007 under 5 U.S.C. § 7521 seeking to remove the appellant from his administrative law judge position based on several charges related to the allegation that, for 3 years, the appellant was in a continuous active duty status with the U.S. Army Reserves, for which he was paid, while simultaneously being employed and paid by the agency.  *Id.*, ¶ 2.  The

Board ultimately found good cause to remove the appellant, and that decision was affirmed by the U.S. Court of Appeals for the Federal Circuit. *Id.*, ¶ 3.

¶3 While the above case was pending before the Board, the agency determined that the appellant should not have been compensated for his work for the agency while he was on active duty with the military. It therefore amended his time and attendance records to retroactively place him on leave without pay (LWOP) for the active-duty period, and notified him of a $427,784.00 debt he owed to the agency for the resulting overpayment. *Id.*, ¶ 4. The appellant filed a 2011 Board appeal challenging that action and alleging that the agency denied him certain rights and benefits under USERRA, including the right to reemployment, continuation of employment, and the use of military, annual, and sick leave. *Id.*, ¶ 5. The appellant also asserted that the agency should have followed the procedures set forth at 5 U.S.C. § 7521 before retroactively placing him on LWOP because that action constituted a suspension and a reduction in pay, and that the Board should reopen his removal case to adjudicate a USERRA affirmative defense, reverse his removal, and reinstate him. *Id.*, ¶¶ 5-6.

¶4 After a hearing, an administrative law judge ruled that the appellant's USERRA affirmative defense in connection with his removal was barred by the doctrine of res judicata, and that the agency's actions were not covered under 5 U.S.C. § 7521; thus, the agency did not need to first file a complaint and have the Board find good cause before placing the appellant on LWOP and taking related actions. *Id.*, ¶¶ 7-8. The administrative law judge also found that, although the agency generally proved by preponderant evidence that it would have placed the appellant on LWOP and imposed the overpayment for a legitimate reason, the appellant nevertheless was entitled under USERRA to a limited modification of his placement on LWOP to credit him with the days and hours in which he was on military leave and approved annual or sick leave. *Id.*, ¶¶ 9-11, 13. Thus, the administrative law judge ordered the agency to recalculate the debt based on salary overpayment to credit the appellant with all such hours

of leave and all monetary benefits that would accrue from being in a pay status during such periods of leave, including the hours of annual and sick leave that accrued when he was, or should have been, in a paid leave status.  *Id.*, ¶ 13.

¶5      On review of that decision, the Board affirmed the finding that res judicata precluded consideration of the appellant's claim that he should be reemployed and reinstated, vacated the remainder of the initial decision, and remanded for further adjudication.  *Id.*, ¶¶ 1, 25-28.  The Board noted that an administrative law judge who alleges a constructive removal or other action in violation of 5 U.S.C. § 7521 may file a complaint with the Board under 5 C.F.R. § 1201.142, and such a complaint shall be adjudicated in the same manner as agency complaints seeking actions against administrative law judges.  *Id.*, ¶ 27.  The Board then ordered the administrative law judge to address two initial questions: (a) does this case involve an action under 5 U.S.C. § 7521; and (b) if so, is there good cause for such an action?  *Id.*, ¶ 28.  The Board noted that, after addressing these questions, the administrative law judge may readopt, if appropriate, her findings addressing the appellant's USERRA claims.  *Id.*  The Board further held that the administrative law judge may address on remand the agency's contentions in its cross petition for review, including its claim that the Board does not have the authority to review the validity or amount of the appellant's debt to the agency, which had already been decided by an administrative law judge with the Department of Health and Human Service's Departmental Appeals Board (DAB).  *Id.*, ¶¶ 4, 29-30.

¶6      On remand, the administrative law judge has found that this case does not involve a "suspension," as defined for purposes of 5 U.S.C. § 7521, or a constructive suspension because the agency did not bar the appellant from reporting to work, prevent him from performing his duties during the 3-year period in question, or cause his absence from the workplace; rather, his absence from the workplace was voluntary.  Remand File, Tab 9, Remand Initial Decision (RID) at 23-24.  The administrative law judge also held that the appellant was not

"without pay" during the period in question because he was still paid his full Government salary from the Department of the Army, and thus "still was paid a full day's Government pay for a full day's Government work, albeit he spent days performing duties for both the Army and SSA." RID at 24. The administrative law judge distinguished Board cases involving involuntary placements on LWOP made within the context of retirement matters, which were found to be suspensions, finding that the agencies in those cases actively communicated erroneous or misleading information to the employees indicating that they would not be in an unpaid status after their retirement date, but nevertheless placed them in that status, and the employees in those cases were without duties during the periods in question, unlike the appellant, who was not in a "status without duties" under 5 U.S.C. § 7501(2). RID at 23-24. Further, the administrative law judge found that this case does not involve a "reduction in pay" because Board precedent provides that withholding pay based on an employee's placement in an absent without leave or LWOP status does not constitute an appealable reduction in the rate of basic pay. RID at 25-26.

¶7 Regarding the agency's cross petition for review, the administrative law judge held that the Board had the authority to review the validity and amount of the debt because the assessment of the components of the alleged salary overpayment was integral to the disposition of the underlying USERRA claim. RID at 26-28. She also found that the doctrine of collateral estoppel did not apply to the DAB decision because the appellant in that proceeding "did not have a full and fair opportunity to litigate issues raised under USERRA that affect the amount of the salary overpayment or the issue of whether he elected to use other leave pursuant to 5 C.F.R. § 353.106(a)." RID at 29-33. Finally, the administrative law judge adopted and incorporated into the remand initial decision her prior findings that the agency violated USERRA when it retroactively processed personnel actions that resulted in the denial of military, annual, and sick leave to which the appellant was entitled and the denial of

benefits properly accruing to him when he was entitled to be in a pay status as a result of using such leave. RID at 34. She therefore ordered the agency to modify or replace the personnel actions placing the appellant on LWOP for the period between January 2, 2003, and January 17, 2006, with personnel actions that reflect the days and hours during that period in which he was on military, annual, and sick leave, and to recalculate the debt for salary overpayment to credit him with all such hours of leave and all monetary benefits that would accrue from being in a pay status during such periods of leave. RID at 35.

## ANALYSIS

The agency did not suspend the appellant under 5 U.S.C. § 7521(b)(2).

¶8        The appellant asserts on review that the agency's action retroactively placing him on LWOP constituted a "suspension" under 5 U.S.C. § 7521(b)(2), and required the agency to first file a complaint with the Board and have the Board find good cause before the action could be taken.[2] Petition for Review (PFR) File, Tab 1 at 10, 12. In support of this argument, the appellant asserts that the agency's August 14, 2007 complaint seeking his removal was based on disciplinary reasons, and that the agency used one of the charges supporting that complaint and prohibiting improper dual employment to retroactively amend his time and attendance records. *Id.* at 10, 12. In further support, he relies upon the Board's decisions in *Martin v. U.S. Postal Service*, 123 M.S.P.R. 189, (2016), *Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294 (2014), and *McHenry v. U.S. Postal Service*, 121 M.S.P.R. 80 (2014). *Id.* at 10-12.

¶9        An action may be taken against an administrative law judge only for good cause established and determined by the Board on the record after an opportunity for a hearing. 5 U.S.C. § 7521(a). Actions covered by section 7521 include a removal, a suspension, a reduction in grade or pay, and a furlough of 30 days or less. 5 U.S.C. § 7521(b). "Suspension," for purposes of section 7521(b)(2),

---

[2] The agency has filed a response to the petition for review. PFR File, Tab 3.

means the "placing of an employee, for disciplinary reasons, in a temporary status without duties and pay." 5 U.S.C. §§ 7501(2), 7511(a)(2); *see Lawson v Department of Health and Human Services*, 64 M.S.P.R. 673, 680 (1994) (referencing 5 U.S.C. § 7511 to define the phrase "reduction in pay" as used in 5 U.S.C. § 7521(b)(4)), *aff'd*, 73 F.3d 377 (Fed. Cir. 1995) (Table); *see also Butler v. Social Security Administration*, 331 F.3d 1368, 1372 (Fed. Cir. 2003) (requiring that 5 U.S.C. §§ 7512 and 7521, which describe the actions covered under the Board's jurisdiction, be construed consistently). The placement of an employee in an enforced leave status for more than 14 days is an appealable suspension. *Martin*, 123 M.S.P.R. 189, ¶ 9.

¶10 Here, the administrative law judge found that the agency did not suspend the appellant because it did not bar him from reporting to work, prevent him from performing his duties, or cause his absence from the workplace; rather, his absence was voluntary. RID at 23-24. Moreover, she found that the appellant was not "without pay" during the period in question because he was still being paid a full salary by the Department of the Army based on his active duty status. RID at 24. She found that she did not need to address whether the action was taken "for disciplinary reasons." *Id.* Thus, the appellant's assertion on review regarding the purported disciplinary reasons for his placement on LWOP is misplaced. In any event, we agree with the administrative law judge that the agency's action retroactively placing the appellant on LWOP to eliminate his improper dual compensation, *see* RID at 11-14, did not constitute a "suspension" because the agency did not place him in a "status without duties" during the period in question. Rather, the appellant chose to be absent from his agency workplace during his scheduled work hours. RID at 23. For a significant portion of the 3-year period, the appellant worked for the Department of the Army on active duty on weekdays from 8:00 a.m. to 5:00 p.m. at Fort McPherson, and therefore was absent from his agency workplace in Atlanta, when he was required to be on duty from 8:00 a.m. to 4:30 p.m. RID at 5, 9, 23. He was required to be

on LWOP for long-term absences for military duties, but instead of requesting LWOP, he continued adjudicating agency cases on weeknights, weekends, and from his home, even though he did not have approval to work from an alternative duty station. RID at 7, 9, 23.

¶11    The administrative law judge found that *Martin*, *Abbott*, and *McHenry* were distinguishable from this case because the agency never prevented the appellant from reporting to work or performing his duties, nor did the agency ever provide the appellant with any erroneous or misleading information that he would be paid even if he was absent from work during his scheduled hours without having taken leave. RID at 23-24. The appellant does not explain why he believes the administrative law judge's analysis regarding these cases is incorrect. Instead, he merely asserts that the cases are "strikingly similar" and "on point" with his appeal. PFR File, Tab 1 at 10-11. Therefore, he has shown no error in the administrative law judge's analysis. *See* 5 C.F.R. § 1201.114(b) (requiring a petition for review to state a party's objections to the initial decision, including all of the party's legal and factual arguments with supporting references to applicable laws or regulations and the record).

¶12    In any event, the administrative law judge correctly found that *Martin* is distinguishable from this appeal. In *Martin*, 123 M.S.P.R. 189, ¶¶ 2, 4, the appellant had been placed by the agency in a retirement status, i.e., a status without duties, effective July 31, 2011, pursuant to the terms of a settlement agreement. After the Office of Personnel Management (OPM) did not approve certain enhanced retirement contributions, the Board found that the appellant had suffered an appealable nonconstructive suspension when the agency retroactively placed her in an LWOP status despite having told her that she would be restored as if she had never left the agency if OPM did not approve the retirement. *Id.*, ¶¶ 3-4, 9. Thus, the appellant in *Martin* had been placed by the agency in a status without duties during the period in question, between July 31, 2011, and October 3, 2012, *Id.*, ¶ 4, before the retroactive placement on LWOP; by contrast,

the appellant in this case had not been placed in such a status. In fact, he was generally in a duty status for the 3 years in question, with the exception of those dates on which he had requested and received approved leave. RID at 9-10, 23.

¶13    Similarly, *Abbott* is distinguishable from this appeal because it involved an agency's prospective placement of an employee on enforced leave, i.e., a status without duties, because there was no work available within her medical restrictions. *Abbott*, 121 M.S.P.R. 294, ¶¶ 3, 6, 9. The appellant in this case was not prospectively placed in a status without duties during the period in question due to an unavailability of work. In *McHenry*, the Board found that the agency suspended the appellant when it "retroactively rescinded his sick leave, directed him not to return to work, and placed him in an LWOP status for more than 14 days." *McHenry*, 121 M.S.P.R. 80, ¶¶ 3, 8. Thus, the appellant in *McHenry*, like the appellant in *Martin*, was already in a status without duties, i.e., sick leave, when the agency retroactively placed him in a different status without duties, i.e., LWOP, which did not include pay. *See Slocum v. U.S. Postal Service*, 107 M.S.P.R. 129, ¶¶ 3, 12 (2007) (describing sick leave as a type of non-duty status). Thus, in all three of the cases cited by the appellant, the employees were either prospectively placed in a status without duties and pay, unlike the appellant, or retroactively placed in a status without pay after having already been placed by the agency in a status without duties. The appellant has identified no authority supporting his assertion that the agency effected an appealable suspension when it retroactively placed him on LWOP for a period during which he had not already been placed in a status without duties and, in fact, was absent from the workplace when he was in a duty status.

The agency did not reduce the appellant in pay under 5 U.S.C. § 7521(b)(4).

¶14    The appellant further contends that his retroactive placement on LWOP constituted a "reduction in pay" under 5 U.S.C. § 7521(b)(4) because he performed his duties as an administrative law judge when he was on leave from active reserve duty, and thus fully earned his agency salary during those periods

of time. PFR File, Tab 1 at 13-14. He therefore asserts that "[a]ny attempt by the Agency to effectuate a reduction in salary under the pretense of 'debt' or 'salary overpayment' is clearly an action that falls within the Board's jurisdiction under 5 U.S.C. § 7521(b)(4) as a salary reduction." *Id.* at 14.

¶15 As set forth above, the administrative law judge found no reduction in pay because the agency's withholding of pay based on the appellant's placement on LWOP did not constitute an appealable reduction in his rate of basic pay. RID at 25-26. This determination was correct. A reduction in pay is defined for purposes of 5 U.S.C. § 7521 as a reduction in the rate of basic pay fixed by law or administrative action for the position held by an employee. 5 U.S.C. § 7511(a)(4); *see Lawson*, 64 M.S.P.R. at 680. Here, the appellant does not allege, and there is no indication in the record demonstrating, that the agency reduced his rate of basic pay when it placed him on LWOP. Although the appellant contends on review that he earned a salary from the agency during those periods when he was on leave from active reserve duty, this assertion does not demonstrate an appealable reduction in his rate of basic pay. Therefore, the appellant has shown no error by the administrative law judge.

¶16 Accordingly, we agree with the administrative law judge that this case does not involve a suspension or a reduction in pay under 5 U.S.C. § 7521, and that there is therefore no need to reach the question of whether there is good cause for the agency's action. RID at 33; *see Jennings*, 123 M.S.P.R. 577, ¶ 28.[3] The Board's jurisdiction is not plenary; it is limited to those matters over which it has been given jurisdiction by law, rule or regulation. *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985). We acknowledge that the agency in this case retroactively subjected the appellant to a major personnel

[3] The appellant does not challenge on review the USERRA findings incorporated by the administrative law judge into her remand initial decision from her prior initial decision, including her order requiring the agency to modify or replace certain personnel actions during the period in question. PFR File, Tab 1 at 4-5; RID at 34-35. Therefore, we need not address those findings in connection with the appellant's petition for review.

action with far-reaching financial consequences for him.  However, except to the limited extent discussed below, the Board lacks jurisdiction to rule on the propriety of that action.  The appellant's chief remedy lies elsewhere, in his challenge to the DAB decision.

The appellant's military service was not a substantial or motivating factor in the agency's action retroactively placing him on LWOP during the periods for which it had previously approved annual and sick leave.

¶17    The agency asserts in its cross petition for review that the administrative law judge did not apply the factors set forth in *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001), in deciding whether the appellant established that his uniformed service was a substantial or motivating factor in the agency's action retroactively placing him on LWOP during the periods for which it had previously approved annual and sick leave.[4]  PFR File, Tab 2 at 24. In this regard, the agency contends that the following factors weigh against a finding that the appellant met his burden by preponderant evidence: (1) proximity in time between the employee's military activity and the agency's action (taken 18 months after the appellant's active military duty ended); (2) evidence of disparate treatment of certain employees compared to other employees with similar work records or offenses (no such evidence); (3) inconsistencies between the proffered reason and other actions of the agency (no such inconsistencies); and (4) evidence of the agency expressing hostility

---

[4] The agency also asserts on review that the Board lacks the authority to recalculate or otherwise determine the amount of the appellant's debt to the agency, and that collateral estoppel precludes the relitigation of the amount of that debt.  PFR File, Tab 2 at 11-22. Given our determination that the appellant has not proven that his military service was a substantial or motivating factor in the agency's actions relating to his annual and sick leave, we need not address these arguments in connection with those types of leave. The agency does not challenge the administrative law judge's finding that the appellant's military service was a motivating factor in the substitution of LWOP for approved military leave, but instead contends that the administrative law judge lacked jurisdiction to find that the agency violated USERRA in denying military leave and was precluded under collateral estoppel from making that determination.  *Id.* at 23 n.5.  We address these arguments in separate sections of this Final Order.

towards members protected by the statute together with knowledge of the appellant's military activity (no such evidence). *Id.* at 25-27. The agency also asserts that the mere awareness of an employee's military service does not mean that the employer relied on, took into account, considered, or conditioned its action on such service. *Id.* at 27-29. Thus, the agency asserts that the mere fact that the appellant's misconduct, which prompted the agency to retroactively place him on LWOP, occurred while he was on active duty does not mean that it was motivated to discriminate against him based on his military service. *Id.* at 29-30.[5]

¶18        The administrative law judge found that military leave, annual leave, and sick leave are benefits of employment under USERRA and that the agency denied the appellant such benefits when it retroactively placed him on LWOP. *Jennings v. Social Security Administration*, MSPB Docket No. AT-4324-11-0442-I-1, Initial Appeal File (IAF), Tab 115, Initial Decision (ID) at 36, 39-44. She further found that the appellant met his burden of proving that his uniformed service was a substantial or motivating factor in that decision because the denial of military leave is a benefit provided to military members exclusively and was an express basis for the action, and the acting official testified that, although he did not consider the appellant's military status in deciding to seek recovery of the funds paid to him, he did consider that the appellant engaged in improper dual employment, which included the fact that he was on active military service while working as an administrative law judge. ID at 29-31, 40, 44. The administrative law judge then found that the agency did not prove by preponderant evidence that

[5] The appellant has filed a motion to dismiss the agency's cross petition for review as untimely, and the agency has filed a motion for leave to file a response. PFR File, Tabs 5-6. We find that the agency timely filed its cross petition on the first workday following the filing deadline, which fell on a holiday weekend. PFR File, Tabs 1-2; *see* 5 C.F.R. §§ 1201.23 (explaining that if the date that ordinarily would be the last day for filing falls on a weekend or a Federal holiday, the filing period includes the first workday after that date), 1201.114(e) (providing that a party must file cross petition within 25 days of the date of service of the petition for review). Accordingly, we deny the appellant's motion and need not consider the agency's motion.

it would have denied the appellant military, annual, and sick leave, on the dates he requested such leave, for legitimate reasons.  ID at 31-34, 36-44.

¶19     Under 38 U.S.C. § 4311(a), and for purposes of this appeal, a person who is a member of, performs, or has performed service in a uniformed service shall not be denied any benefit of employment by an employer on the basis of such membership or service.  An employer shall be considered to have engaged in prohibited actions if the person's membership or service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership or service.  38 U.S.C. § 4311(c)(1).  A "'benefit of employment' . . . means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice."  38 U.S.C. § 4303(2).  Leave to which an employee is entitled is a benefit of employment.  *Machulas v. Department of the Air Force*, 109 M.S.P.R. 165, ¶ 6 (2008); *Johnson v. U.S. Postal Service*, 85 M.S.P.R. 1, ¶ 8 (1999).

¶20     In USERRA actions, there must be an initial showing by the employee, by preponderant evidence, that the employee's military status or performance of service was at least a motivating or substantial factor in the agency's action, upon which the agency must prove, also by preponderant evidence, that the action would have been taken for a valid reason despite the protected status or service.  *Strausbaugh v. Government Printing Office*, 117 M.S.P.R. 566, ¶ 11, *aff'd*, 493 F. App'x 61 (Fed. Cir. 2012); *see McMillan v. Department of Justice*, 120 M.S.P.R. 1, ¶ 13 (2013).  Military service is a motivating factor for an adverse employment action if the employer relied on, took into account, considered, or conditioned its decision on the employee's military-related absence or obligation.  *Strausbaugh*, 117 M.S.P.R. 566, ¶ 11.  The factual question of discriminatory motivation or intent may be proven by direct or circumstantial evidence.  *Sheehan*, 240 F.3d

at 1014. Direct evidence of discrimination may be any statement made by an employer that reflects directly the alleged discriminatory attitude and bears directly on the contested employment decision. *Jordan v. U.S. Postal Service*, 90 M.S.P.R. 525, ¶ 9 (2002). By contrast, circumstantial evidence of discriminatory motivation under USERRA:

> [M]ay be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Sheehan*, 240 F.3d at 1014. "In determining whether the employee has proven that his protected status or activity was part of the motivation for the agency's conduct, all record evidence may be considered, including the agency's explanation for the actions taken." *Id.*

¶21 When an appellant does not claim that performance in a uniformed service or an obligation to perform such service accounted for the agency's action, but instead claims that the action resulted from "something that happened during their service," the appellant has not raised a claim under USERRA, and the appeal must be dismissed for lack of jurisdiction. *See Daniels v. U.S. Postal Service*, 88 M.S.P.R. 630, ¶¶ 8-9, *aff'd*, 25 F. App'x 970 (Fed. Cir. 2001); *McBride v. U.S. Postal Service*, 78 M.S.P.R. 411, 414-115 (1998). Thus, the Board has applied this reasoning to a claim that the agency terminated a probationer due to certain abilities acquired as a result of military service, *Daniels*, 88 M.S.P.R. 630, ¶ 5, and to a claim that the agency denied initial employment based on a disability arising out of performance of military service, *McBride*, 78 M.S.P.R. at 415.

¶22 Similarly, an administrative judge properly denied corrective action under USERRA when the evidence showed that the agency's decision to terminate the appellant was based not on his military service, but rather on conduct that

occurred while he was on a pass during his active military duty status. *Strausbaugh*, 117 M.S.P.R. 566, ¶ 12. The Board noted that USERRA "only prevents discrimination on account of service in the military; it does not prohibit an agency from considering events which occur during an employee's service." *Id.* Nothing in USERRA requires an agency to disregard misconduct, however egregious, if it occurred during an employee's military service. *Id.* Thus, the Board concluded that, "although there is no dispute that the conduct at issue occurred while the appellant was on active military duty status, it does not follow that the agency decision to terminate him for that conduct establishes that its decision was motivated by his military status." *Id.*

¶23       The Board has similarly held that USERRA does not prohibit an employer from taking action against an employee for gratuitous misconduct in the course of performing military duties, such as terminating an employee for doing Naval Reserve business at work in violation of company policy. *McMillan*, 120 M.S.P.R. 1, ¶ 17. Thus, the employment protection under 38 U.S.C. § 4311 is based upon the employee's compliance with the reasonable and ordinarily accepted standards of personal conduct and performance of all employees. *Id.* To the extent an appellant may violate those standards, and is not required to do so by his military orders, his activity is not protected under section 4311(a). *Id.*

¶24       In a November 2, 2006 memorandum from the Special Agent in Charge (SAIC) of the Atlanta Field Division, Office of the Inspector General (OIG), Office of Investigations, to the Chief Administrative Law Judge of the Atlanta Region's Office of Disability Adjudication Review, the SAIC noted the origins and history of its investigation of the appellant, as well as the fact that information provided by the Atlanta Region's Center for Human Resources (CHR) indicated that, "[p]er the Office of Personnel Management Employment Rights and Benefits of Federal Civilian Employees, an SSA employee cannot receive compensation from the SSA while serving as a reservist on extended active military duty." IAF, Tab 114 at 1, 6. The SAIC explained that the CHR

had advised that employees cannot receive dual compensation while on extended active military duty and that "dual compensation was identified" in connection with the investigation into the appellant. *Id.* at 6, 10.

¶25     The agency then took a series of actions in June-July 2007, and in October 2007, to recover the salary overpayment. IAF, Tab 60 at 8-18. In so doing, the agency noted that, during the applicable time period, the appellant "was receiving dual compensation in violation of OPM regulations which in turn constitutes an overpayment" and that the OIG had recommended that he be directed to repay overpaid amounts. *Id.* at 9. The agency noted that its Office of General Counsel "reported that it found OPM guidance and at least two Comptroller General cases which essentially state/hold that a federal employee called to regular active duty may not be paid his civilian salary at the same time he is on regular active duty." *Id.* at 12. The agency discussed the legal authorities supporting recovery of the overpayment, including the agency's internal policies, OPM published guidance, and Comptroller General decisions. *Id.* at 17-18.

¶26     The agency's Inspector General (IG) issued a September 2007 Management Advisory Report to the Commissioner addressing the adequacy of administrative practices in the Atlanta North Office of Disability Adjudication and Review relating to the accuracy of employees' time and attendance records and compliance with established agreements and procedures when employees worked at alternate duty stations. IAF, Tab 110 at 67-70. The report requested a corrective action plan, to be provided within 60 days, that addressed each recommendation in the report. *Id.* at 67. The IG determined that, between January 2003 and December 2005, an administrative law judge (the appellant) purportedly worked full time with the agency while simultaneously serving full time on active military duty, thereby improperly receiving $359,769 in salary and accruing $26,492 in annual leave. *Id.* at 73, 77. The IG noted that, according to a U.S. Comptroller General decision, Federal employees are prohibited from

working for, and receiving compensation from, their employing Federal agency while on active military duty. *Id.* at 77. Moreover, according to the agency's policies and procedures, an employee on extended active military duty must be placed in a "Military Leave Without Pay" status. *Id.* The IG recommended that the agency, among other things, "[s]eek repayment from the ALJ [Administrative Law Judge] for the $359,769 in salary and $26,492 in accrued annual leave that was improperly received from SSA while he was on full-time active military duty" and "[t]ake any administrative actions deemed appropriate to address the ALJ's actions, which led to the receipt of salary and benefits to which the ALJ was not entitled." *Id.* at 79-80. The report noted that the agency had agreed with the recommendations. *Id.* at 80. In November-December 2007, the agency retroactively placed the appellant on LWOP effective January 2, 2003, and notified him of the resulting overpayment. IAF, Tab 1 at 9-10, Tab 51 at 149-60.

¶27 At the hearing in this case, the Chief Administrative Law Judge, who was the deciding authority as to administrative law judge personnel actions, testified that, after the OIG conducted an investigation of the appellant based on an anonymous tip, they "concluded that he was, in fact, engaging in improper dual employment and, thus, receiving improper dual compensation and recommended to me that we take the necessary action to recoup the salary overpayment." IAF, Tab 100, Hearing Transcript (HT), Volume III at 100-03 (testimony of the Chief Administrative Law Judge). He testified that his office then conducted its own investigation and reached the same conclusion, i.e., that the appellant engaged in improper dual employment. *Id.* at 104. He testified that he made the decision to seek recoupment of the salary overpayment and reached that decision based upon the following:

> We had the recommendation from the Office of the Inspector General that because of the improper dual employment and improper dual compensation that we seek overpayment – seek recoupment of that salary overpayment. We consulted with the Office of the General Counsel to see if that action of recoupment would be legal

> and the Office of General Counsel said, yes, it was legal and also consistent with Agency policy. We also consulted with the Office of Labor Management and Employee Relations and they agreed that the action was the appropriate action, and my staff also recommended we take that action. And I considered myself that I thought it was an appropriate action to take. ALJs, administrative law judges, are – they hold a high and prominent federal office and they are expected to act in a fitting manner. I believe that taking public money to which a person is not entitled to did not fit that standard.

*Id.* at 104-05. The Chief Administrative Law Judge also testified that he did not personally research the applicable law because "[w]e have the lawyers" and he relied "on the lawyers to do the research for us" to obtain consistent advice. *Id.* at 106. He further indicated that the appellant was retroactively placed on LWOP to recoup the salary overpayment and that, although he was aware that the reason for the improper dual employment was because the appellant "was in active duty for the military in addition to having the position as an administrative law judge," he did not consider the appellant's military status in seeking the recovery because it was not relevant. *Id.* at 106-07. The Chief Administrative Law Judge testified that it was not relevant because "[w]e had the recommendation that he had engaged in improper dual employment," and his office reached the same conclusion, which was to take the action recommended by the IG "based on the facts that were presented" in the recommendation. *Id.* at 107.

¶28    Given the above record evidence, we find that the agency based its determination to retroactively place the appellant on LWOP, instead of on his previously approved annual and sick leave, not on his military service, but rather on conduct that occurred during his active-duty military service. *See Strausbaugh*, [117 M.S.P.R. 566](), ¶ 12. As set forth above, USERRA prevents discrimination on account of service in the military; it does not prohibit an agency from considering events that occur during an employee's military service, such as the appellant's decision in this case to continue to work for the agency and receive pay from the agency while on active military duty. *Id.* Although

there is no dispute that the appellant continued to work for the agency and receive pay from the agency while he was on active military duty status, it does not follow that the decision to retroactively place him on LWOP instead of annual and sick leave establishes that its decision was motivated by his military status or service. *See id.*; *see also Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231, 1233, 1239 (11th Cir. 2005) (recognizing that an employer can be aware of an appellant's military status yet still not consider, rely on, or take into account such status in a discriminatory context when taking an action).

¶29        Moreover, a review of the factors set forth in *Sheehan* demonstrates that the appellant did not meet his burden in this regard.  The appellant did not identify direct evidence that his military service was a motivating factor in the agency's decision, nor did the administrative law judge rely on such direct evidence. Regarding proximity in time between the appellant's military activity and the agency's action, the appellant's active duty service ended on January 17, 2006. IAF, Tab 98, HT, Volume I at 52 (stipulation of the parties).  The agency made a formal request on July 16, 2007, nearly 18 months later, to amend the appellant's time and attendance records to generate the salary overpayment.  IAF, Tab 60 at 16.  On December 7, 2007, almost 2 years after the end of his active duty service, the agency approved, as set forth on the applicable Standard Form 50, his retroactive placement on LWOP.  IAF, Tab 1 at 9.  Under these circumstances, the timing of the agency's action does not favor discriminatory motivation.  *Cf. McMillan v. Department of Justice*, 812 F.3d 1364, 1373 (Fed. Cir. 2016) (finding that the timing of a denial of a tour extension, less than 2 months after the taking of military leave, favored a claim of discriminatory motivation under USERRA). In addition, the appellant did not show any inconsistencies between the agency's proffered reason for the action and its other actions, nor did he show any expressed hostility by the agency towards members protected by the statute together with knowledge of his military activity.  In fact, the reasons proffered by the agency for the action were consistent with its other actions, as well as with

the recommendations it received from other agency components, and it consistently accommodated the appellant's military obligations. *See* IAF, Tab 98, HT, Volume I at 73-74 (testimony of the appellant that the agency "was always accommodating to me in terms of approving annual leave, sick leave, or military leave whenever I requested that type of leave in order to perform annual training or additional training or active duty"). Finally, the appellant did not show disparate treatment. *See* ID at 31 n.10. Thus, he has not proven by preponderant evidence that his military status or performance of uniformed service was a motivating or substantial factor in the agency's action as it related to his annual and sick leave.[6]

**The agency has not shown that the Board lacks the authority to order the agency to recalculate the appellant's debt to the agency.**

¶30    The agency asserts that the administrative law judge improperly ordered it to recalculate the appellant's debt based on a salary overpayment because an administrative law judge with the DAB previously found that the appellant was indebted to the agency for $427,784.00, and the Board lacks the authority to review the merits of a debt collection action. PFR File, Tab 2 at 2, 11-13. In this regard, the agency contends that the DAB administrative law judge issued his decision pursuant to 5 U.S.C. § 5514, which provides for the collection of debts owed to the United States by Federal employees. *Id.* at 5.

¶31    The Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation. *Maddox*, 759 F.2d at 10. We are aware of no law, rule, or regulation that grants the Board jurisdiction over a debt collection action except in the context of the recovery of an overpayment in retirement benefits by OPM. *Secrist v. U.S. Postal Service*, 115 M.S.P.R. 199,

---

[6] As previously noted, the agency does not assert on review that the administrative law judge erred when she found that the appellant's military service was a motivating factor in the denial of military leave, nor does it allege that it had legitimate reasons, standing alone, for that action. PFR File, Tab 2 at 23 n.5. Therefore, we need not address such issues on review. *See* 5 C.F.R. § 1201.115.

¶ 5 (2010). Nevertheless, the Board may address a debt collection issue "when it is integral to the disposition of an underlying appealable action." *Id.*

¶32    There is no dispute that the Board has jurisdiction over this USERRA appeal. Moreover, if the Board determines that a Federal executive agency has not complied with the provisions of 38 U.S.C. chapter 43 relating to the employment of a person by the agency, the Board "shall enter an order requiring the agency . . . to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by such person by reason of such lack of compliance." 38 U.S.C. § 4324(c)(2). The amount of military leave to which the appellant was entitled during the period in question, which may affect the amount of the appellant's debt to the agency, is integral to the merits of the underlying USERRA appeal as well as the compensation the Board may order in this case. The agency has not identified any authority, including 5 U.S.C. § 5514, which prevents the Board from ordering corrective action in a USERRA appeal in the form of compensation for losses of benefits that may ultimately affect the amount of a debt an appellant owes to an agency. *See Haskins v. Department of the Navy*, 106 M.S.P.R. 616, ¶ 11 (2007) (holding that the Board has the authority under USERRA to order a remedy for an agency's improper denial of military leave benefits by requiring agencies to correct the employee's leave record to reflect a proper accounting of military leave); *Morgan v. U.S. Postal Service*, 82 M.S.P.R. 1, ¶ 7 (1999) (holding that Congress enacted USERRA as remedial legislation, which was to be interpreted liberally to protect those persons who have served in our armed forces), *aff'd*, 250 F.3d 754 (Fed. Cir. 2000) (Table), *and overruled on other grounds by Fox v. U.S. Postal Service*, 88 M.S.P.R. 381, ¶ 9 n. (2001); *cf. Minor v. Merit Systems Protection Board*, 819 F.2d 280, 283 (Fed. Cir. 1987) (holding that a decision of the Office of Workers Compensation Programs or the Employees' Compensation Appeals Board regarding a compensation award does not bind the Board when it is acting within its own separate statutory sphere). Accordingly, the agency has not shown that the Board lacks the authority to order

the agency to recalculate the appellant's debt in this case, and we agree with the administrative law judge's analysis on this issue. *See* RID at 26-29.

The agency has not shown that collateral estoppel applies in this case.

¶33      The agency also contends on review that collateral estoppel precludes relitigating the issue of the amount of the appellant's debt and the issue of whether he elected to use military leave under 5 C.F.R. § 353.106(a).[7]  PFR File, Tab 2 at 15-22.  The administrative law judge found that the requirements for applying that doctrine were not met in this case.  RID at 30-33.  We agree.

¶34      Collateral estoppel, or issue preclusion, is appropriate when the following conditions are met:  (1) the issue is identical to that involved in the prior action; (2) the issue was actually litigated in the prior action; (3) the determination on the issue in the prior action was necessary to the resulting judgment; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action, either as a party to the earlier action or as one whose interests were otherwise fully represented in that action.  *Hau v. Department of Homeland Security*, 123 M.S.P.R. 620, ¶ 13 (2016), *aff'd sub nom. Bryant v. Merit Systems Protection Board*, 878 F.3d 1320 (Fed. Cir. 2017).  In determining whether an issue is identical for collateral estoppel purposes, differences precluding the application of collateral estoppel may be in facts, subject matter, periods of time, case law, statutes, procedural protections, notions of public

---

[7] The agency suggests that, because the DAB administrative law judge found that the appellant did not comply with the notice requirement set forth at 38 U.S.C. § 4312, and therefore was not entitled to reemployment under that provision, the Board should not find in the appellant's favor under 38 U.S.C. § 4311.  PFR File, Tab 2 at 20-21.  The applicable statutes do not suggest such an approach, and the agency has identified no authority supporting such a finding.  *See, e.g.*, *Bostwick v. Department of Agriculture*, 122 M.S.P.R. 269, ¶ 5 (2015) (noting that there are "two types of cases that arise under USERRA," reemployment cases and discrimination cases); *Erickson v. U.S. Postal Service*, 120 M.S.P.R. 468, ¶ 15 (2013) (finding that an appellant's rights under 38 U.S.C. § 4311 are separate from his reemployment rights under 38 U.S.C. § 4312); *Clavin v. U.S. Postal Service*, 99 M.S.P.R. 619, ¶ 6 (2005) (explaining the ways in which discrimination and reemployment cases differ under USERRA).

interest, or qualifications of tribunals. *Harris v. U.S. Postal Service*, 119 M.S.P.R. 583, ¶ 6 (2013). Before a party can invoke collateral estoppel, the legal matter raised in the subsequent proceeding must involve the same set of events or documents and the same "bundle of legal principles" that contributed to the rendering of the first judgment. *Tanner v. U.S. Postal Service*, 94 M.S.P.R. 417, ¶ 11 (2003).

¶35 Here, the issues before the Board are whether the agency violated USERRA, 38 U.S.C. § 4311(a), by denying the appellant a benefit of employment on the basis of his performance of service in the uniformed service or his obligation to perform such service, and the nature of the corrective action to be ordered upon finding such a violation. IAF, Tab 41; ID at 18-19. By contrast, the issues before the DAB administrative law judge were whether the appellant was indebted to the Government and the amount of that indebtedness. IAF, Tab 51 at 12, 16; *see* 5 U.S.C. § 5514(a)(2)(D) (providing individuals with an opportunity for a hearing "on the determination of the agency concerning the existence or the amount of the debt"). There is no indication in the DAB decision that the administrative law judge addressed the issue of whether the agency denied the appellant benefits of employment under 38 U.S.C. § 4311(a), or whether any such denial entitled him to compensation. Thus, there was a difference in the subject matter, statutes, and case law involved in the two proceedings, as well as a difference in the "bundle of legal principles" to be applied in each case. Such differences preclude the application of collateral estoppel in this case. *Cf. Harris*, 119 M.S.P.R. 583, ¶ 7 (finding that, although closely related, the issue in an arbitration proceeding of whether the agency violated a collective bargaining agreement was not identical to the issue before the Board of whether the appellant was furloughed).

¶36 Under 5 C.F.R. § 353.106(a), "[a]n employee absent because of service in the uniformed services is to be carried on leave without pay unless the employee elects to use other leave." The DAB administrative law judge, based on the written record before him after he determined that there were no credibility issues

warranting an oral hearing, held that because the appellant did not notify the agency about his active duty, he "also made no election to use other leave." IAF, Tab 51 at 32-33. The DAB administrative law judge held that the agency's assertion that it had properly placed the appellant on military leave in response to his requests between January 2, 2003, and January 17, 2006, was "in error for, as discussed Petitioner had to be placed in a LWOP status for the entire period." *Id.* at 33 n.23. By contrast, the administrative law judge in this appeal, based on the extensive written record and hearing testimony, held that the agency did not account for all of the military leave to which the appellant was entitled, it was self-evident that the denial of military leave was a substantial or motivating factor in the action because such denial involved a benefit exclusively provided to military members, and the agency did not show that legitimate reasons, standing alone would have induced it to deny the leave. ID at 31-32, 39-40. In so finding, the administrative law judge found that the agency's reliance on the DAB decision did not meet that burden because, among other things, the DAB administrative law judge did not "have the testimony and evidence before him that were produced in the present proceeding," including evidence that the appellant notified his supervisor that he had been ordered to active-duty military service. *Id.* at 40-44. She further found that the appellant had elected to use military leave. *Id.* at 45.

¶37 In determining whether the collateral estoppel prerequisites have been met, the Board and the courts have examined the forum in which the prior action took place to assure that the quality, extensiveness, and procedural and substantive fairness of the adjudication warrant application of the doctrine. *Wildberger v. Small Business Administration*, 69 M.S.P.R. 667, 670 (1996), *aff'd in part and vacated in part on other grounds*, 215 F.3d 1346 (Fed. Cir. 1999) (Table). Here, we agree with the administrative law judge that the DAB administrative law judge "made his decision on the written record, that is, without providing an oral evidentiary hearing, and therefore he did not have the testimony and evidence

before him that were produced in the present proceeding," and that the agency's evidence and the DAB decision "do not establish that the Agency had valid or legitimate reasons to calculate the debt without accounting for all of the military leave to which [the appellant] was entitled." ID at 40-41. Moreover, the administrative law judge also correctly found that the procedures under 5 U.S.C. § 5514 "do not appear to contemplate complex factual and/or legal issues such as those arising under USERRA, which sometimes involve substantive written motions and often require significant amounts of discovery, oral testimony, exhibits, and more than one issue of credibility or veracity." RID at 32. Under these circumstances, we question the extensiveness and the procedural and substantive fairness of the DAB adjudication, and we agree with the administrative law judge that the appellant did not have a full and fair opportunity to litigate issues raised under USERRA that affect the amount of the salary overpayment, as well as the issue of whether he elected to use other leave pursuant to 5 C.F.R. § 353.106(a). *Id.* We have found no indication, for example, that the appellant was on notice in the DAB proceeding that the question of whether he had elected or requested to use military leave would be at issue. By contrast, the question of whether the agency had denied such leave after it had been requested by the appellant, and the applicability of 5 C.F.R. § 353.106(a), were identified as issues in this case. *See, e.g.*, IAF, Tab 41 at 5, Tab 51 at 2, Tab 54 at 6, Tab 70 at 5. Therefore, the agency has shown no error in the administrative law judge's decision not to apply collateral estoppel to the above issues. *See* RID at 29-33.

¶38 Accordingly, we affirm the remand initial decision except as modified to find that the appellant did not prove his USERRA claim as it relates to the denial of annual and sick leave.

**ORDER**

¶39    We ORDER the agency to comply with 38 U.S.C. § 4316(d) and 5 C.F.R. § 353.106(a) by cancelling its retroactive placement of the appellant on LWOP for the days and hours between January 2, 2003, and January 17, 2006, on which it had previously granted him military leave, granting him such military leave, and compensating him for such leave.[8]  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶40    We also ORDER the agency to pay the appellant the correct amount of wages and benefits lost as a result of the agency's actions, as required under 38 U.S.C. § 4324(c)(2).[9]  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶41    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

---

[8] The agency must compensate the appellant for the USERRA violation consistent with the Order language set forth in this decision.  The manner in which such compensation is structured, i.e., whether it may be treated as a separate payment to the appellant or as a reduction in his already-calculated debt, is left to the agency's discretion provided its determination is consistent with applicable laws and regulations.  *See* RID at 35 (ordering the agency to "correct its accounting to show with particularity how it accounted for the restored benefits . . . , whether that is through reducing the alleged salary overpayment or providing Appellant with a lump sum payment").

[9] The Board has held that the general provisions of the Back Pay Act ordinarily do not control the remedy that appellants may receive should they succeed on the merits of their USERRA claims.  *Erickson*, 120 M.S.P.R. 468, ¶ 17; *Lee v. Department of Justice*, 99 M.S.P.R. 256, ¶¶ 25-26 (2005).

¶42　　No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the Office of the Clerk of the Board if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶43　　For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the Clerk of the Board.

**NOTICE OF APPEAL RIGHTS**[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for

                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.